IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  09-cv-02605-WJM-MJW

SHAWN D.  ALLEN,

Plaintiff,

v.

R.  REYNOLDS,

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Docket No. 50)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This case is before the undersigned pursuant to an Order Referring Case issued by District Judge Christine M. Arguello on November 17, 2009.  (Docket No. 8).  On February 9, 2011, the case was reassigned to District Judge William J. Martinez upon his appointment to the court.  (Docket No. 69).

In his original Prisoner Complaint (Docket No. 3), brought pursuant to 42 U.S.C. § 1983, the pro se incarcerated plaintiff, Shawn D. Allen, raised two claims for relief against three named defendants.  However, in an Order Regarding March 15, 2010 Recommendation of United States Magistrate Judge issued by Judge Arguello on June 14, 2010, the claims against two of the named defendants were dismissed, as was a Fourteenth Amendment claim stated in Claim One against the third defendant, defendant Reynolds.  Judge Arguello noted that "[t]herefore, Plaintiff's sole surviving

claim is the First Amendment retaliation claim as stated in Claim One against Defendant Reynolds, which the Defendants did not challenge.  Plaintiff may seek to recover only punitive and nominal damages against Defendant Reynolds."  (Docket No. 32 at 9-10).  See also Docket No. 63, Order dismissing defendants Leyba and Filer as defendants.

After Judge Arguello's Order was entered, plaintiff was granted leave to amend his Complaint (Docket No. 64).  Consequently, the operative pleading is now the Amended Prisoner Complaint (Docket No. 66) in which the plaintiff asserts the following.  On January 9, 2009, plaintiff lodged a complaint letter to the Warden of Arrowhead Correctional Center ("ACC") about defendant Reynolds' alleged misconduct on January 4, 2009.  During that January 4 encounter, Reynolds refused to allow the plaintiff to use the restroom.  Plaintiff disobeyed that "ridiculous order" and used the restroom anyway.  At that time, plaintiff threatened to sue Reynolds, and Reynolds said he would have plaintiff transferred.  On January 12, 2009, plaintiff submitted a Step One Grievance in which he again raised the alleged misconduct by Reynolds.

On January 16, 2009,  Reynolds filed a disciplinary charge against the plaintiff concerning the restroom incident.  In that disciplinary report, Reynolds acknowledged that plaintiff had stated he would take legal action against Reynolds.  On January 21, 2009, plaintiff was convicted of that disciplinary charge and placed in segregation.  Once plaintiff was put in segregation, Reynolds entered plaintiff's cell to do a routine "pack out" during which time, in reprisal for plaintiff's complaints about Reynolds, Reynolds maliciously took 68 photos of the plaintiff's family.  Had plaintiff not engaged in the protected free speech, he would not have been deprived of his photos nor would he have been punished.

3

Plaintiff seeks nominal damages as well as $25,000 in punitive damages for the malicious retaliation.  He does not seek to have the disciplinary conviction expunged. (Docket No. 66 at 8).

A Final Pretrial Order has been entered in this case.  (Docket No. 95).  In addition, a Final Trial Preparation Conference is set for June 16, 2011, at 1:15 p.m. before Judge Martinez, and a two-day jury trial is set to begin before Judge Martinez on June 27, 2011, at 9:00 a.m. (Docket No. 96).

Now before the court for a report and recommendation is the defendant's Motion for Summary Judgment (Docket No. 50).  Plaintiff filed a Response and an Affidavit (Docket Nos. 54 and 55), and defendant filed a Reply (Docket No. 67).  The court has considered all of these motion papers as well as the court's file and applicable Federal Rules of Civil Procedure and case law.  The court now being fully informed makes the following findings, conclusions, and recommendation that summary judgment be entered for the defendant.

In his motion for summary judgment, defendant Reynolds narrowed the remaining claim to one of retaliation by causing disciplinary charges to be brought against plaintiff because plaintiff threatened to file a lawsuit.  (See Docket No. 50 at 11). In his Response, however, plaintiff states:

> I do not seek punitive and nominal damages for defendant filing C.O.P.D. charge on 01/16/2009.  **The sole claim is:  Defendant Reynolds entered my locked room by himself and stole 68 photos of my family so as to penalize me for my 01/04/09 threat to sue him; my 01/09 declaration to the Warden where I complain of defendants** [sic] **misconduct:  my many verbal complaints to several staff between 01/04 and 01/21/2009 and my Step One Grievance . . . which I lodged on the 12th of January 2009.**

4

**I do not raise a "claim" to sue defendant for anything else.**  I mention defendants [sic] retaliatory act of filing C.O.P.D. charge so as to put events in perspective.  I initiated this civil action solely to exact relief for defendants [sic] malicious reprisal on 01/21/09 subsequent to my being put in segregation on account of his most asinine C.O.P.D. charge.  Defendant failed to address my claim of property stolen in reprisal. . . .

. . . **I am only suing for the 68 photos**. . . .

I too mention harassment in my complaint, however, I am not suing for such.  Defendants [sic] pre 01/21/09 conduct is nothing more than a part of my narrative of events leading up to the adverse act which occurred on the 21st.  All throughout this action it has been about my family photos.  Compensatory damages were denied as a possible relief due to this courts [sic] utterly stringent interpretation of my merely stating my photos were "priceless."  So there can be no excuse to fail to address the appropriate claim of retaliation.  The discovery clearly focuses on my photos.

(Docket No. 54 at 1-2) (emphasis added).

In his Reply (Docket No. 67), defendant Reynolds thus addressed the one claim plaintiff states is remaining in this case.  Defendant asserts (1) that the plaintiff's allegations regarding the alleged confiscation and destruction of his property fail to assert a viable claim, (2) plaintiff's retaliation claim is barred due to plaintiff's failure to comply with exhaustion requirement contained in the Prison Litigation Reform Act ("PLRA"), and (3) in the alternative, plaintiff cannot show that "but for" Reynolds' alleged retaliatory motive, the actions of which he complains would not have occurred.

Rule 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and

admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003). However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be admissible. . . .  The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible.'" . . .  Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'" Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Southway, 149 F. Supp.2d at 1273.  "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported

allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

## Law of the Case

Defendant first asserts that plaintiff's allegations regarding the alleged confiscation and destruction of his property fail to assert a viable claim. Defendant notes that in his Response, plaintiff repeatedly states that he is not attempting to assert a claim against Reynolds based on the fact that Reynolds' report of misconduct resulted in a disciplinary conviction; rather, he is asserting that Reynolds retaliated against him by confiscating and destroying his family photographs in January 2009. Defendant notes that in the ruling on the Motion to Dismiss in Part, the court previously dismissed plaintiff's "takings" claim arising out of the confiscation of the photos. Defendant thus asserts that plaintiff's attempt to resurrect his prior "takings" claim is contrary to the law of the case doctrine and fails to establish a separate basis for a retaliation claim against Reynolds. This court does not agree with this argument by defendant.

"In general, the law of the case doctrine provides that when a court decides upon a rule of law, that decision to govern the same issues in subsequent stages in the same

case." <u>Homans v. City of Alburquerque</u>, 366 F.3d 900, 904 (10th Cir. 2004) (quotation omitted).

> The law of the case doctrine is "a restriction self-imposed by the courts in the interest of judicial efficiency.  It is a rule based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued reargument of issues already decided."  <u>Fox v. Mazda Corp. of America</u>, 868 F.2d 1190, 1194 (10th Cir. 1989) (citations omitted).  The law of the case doctrine "encompasses a court's explicit decisions, as well as those issues decided by necessary implication."  <u>Williamsburg Wax Museum v. Historic Figures, Inc.</u>, 810 F.2d 243 (D.C. Cir. 1987) (citations omitted).

<u>Anthony v. Baker</u>, 955 F.2d 1395, 1397 n.1 (10th Cir. 1992).

Judge Arguello noted in her Order that plaintiff alleged that Reynolds retaliated against plaintiff after plaintiff filed a grievance by taking some of plaintiff's personal property, in violation of the First and Fourteenth Amendments.  (Docket No. 32 at 2). Later in that Order, Judge Arguello dismissed with prejudice the Fourteenth Amendment takings claim that was based upon the alleged confiscation and loss of his personal property.  Significantly, Judge Arguello did not dismiss the First Amendment retaliation claim.  (See Docket No. 32 at 9).  Therefore, this court finds that the plaintiff's retaliation claim that is premised on the purported confiscation of his property in retaliation for filing a grievance, etc., is not barred by the law of the case doctrine.

**<u>Exhaustion Requirement</u>**

Defendant next asserts that the plaintiff's retaliation claim is barred due to the plaintiff's failure to comply with the PLRA's exhaustion requirement.  The PLRA, *inter alia*, amended 42 U.S.C. § 1997e(a) to require a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  This exhaustion requirement "is mandatory, and the district court [is] not authorized to

dispense with it." Beaudry v. Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Section "1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002).  The Supreme Court has stated: "[W]e stress the point . . . that we will not read futility or other exceptions into [the PLRA's] statutory exhaustion requirement." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  "In *Booth*, the Supreme Court explained that one of the purposes of the exhaustion requirement is to force an inmate to go through the administrative process which in turn might afford prison officials the opportunity to take some corrective action that would preclude litigation." Beaudry, 331 F.3d at 1167.

The "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." Jones v. Bock, 549 U.S. 199, 216 (2007).  As an affirmative defense, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).  "When raising an affirmative defense in a motion for summary judgment, '[t]he defendant . . . must demonstrate that no disputed material fact exists regarding the affirmative defense asserted.' . . .  'If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact.' . . .  'If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is entitled to summary judgment as a matter of law.'" Sparks v. Foster, 241 Fed. Appx. 467, 472, 2007 WL 1748509, at *4 (10th Cir. 2007) (quoting Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997)).

In its regulations, the Colorado Department of Corrections ("CDOC") has a multi-

step administrative grievance process available to inmates which entails a formal three-step written grievance procedure.  <u>See</u> CDOC Administrative Regulation 850-4 and Affidavit of Anthony DeCesaro (Docket No. 50-2).  As noted by the defendant, the regulation sets forth that inmates are required to first attempt to resolve any issue or complaint they have by filing a document know as a Step 1 grievance within 30 days after discovery of their issue or complaint, to which an appropriate CDOC staff person will respond in writing.  If the inmate is not satisfied with the result of the Step 1 grievance, he must then proceed to Step 2 grievance within five days of receipt of the written response to the Step 1 grievance.  If the inmate is still unsatisfied with the response to his Step 2 grievance, he must then proceed to file a Step 3 grievance within five days of receipt of the response to the Step 2 grievance.  The Step 3 grievance is the final step in the CDOC grievance process.

Here, defendant asserts that the plaintiff did not exhaust the administrative remedies made available to him by the CDOC because he did not file within the time frames mandated by prison policy a Step 2 or 3 grievance concerning his complaint that defendant was retaliating against him.  Defendant notes that the plaintiff filed a new series of grievances concerning the incidents given rise to his claims many months later, but defendant asserts that the CDOC's grievance policies and procedures do not permit an inmate to cure the prior failure to file timely grievances by filing a new, duplicative set of grievances several months after the 30-day deadline for grieving an incident had already expired.  As a result, it is asserted that the plaintiff did not exhaust the administrative remedies made available to him by the CDOC.  Accordingly, defendant argues that the plaintiff's claim against him is barred by the PLRA.

10

This court finds, however, that the plaintiff adequately exhausted such administrative remedies that were available.  As shown by the response to plaintiff's first Step 1 grievance, plaintiff's grievance was granted in part with respect to the missing property.  (Docket No. 50-2 at 22).  More specifically, plaintiff was directed to contact the ACC property sergeant and inform him that he wants to have the photos mailed to family or destroyed.  Based upon this response which granted the grievance in part, it would not necessarily follow that plaintiff should have to continue to Step 2 with respect to the portion of the grievance that was granted.  Furthermore, plaintiff alleges that he took the following actions.  (Docket No. 55 at 3).  He allegedly followed the instruction given in the grievance response (and also in a response to a letter plaintiff sent to the Warden) by mailing a letter on March 10, 2009, to the ACC property sergeant.  (Docket No. 55 at 17).  Having allegedly not received a response, plaintiff allegedly mailed a second letter on April 16, 2009, to have the photos mailed to his family.  Plaintiff claims he waited a few weeks and spoke with the facility mail room and property staff, whom he claims had not heard or received anything.  Plaintiff alleges he then spoke with the grievance coordinator who allegedly provided him with another Step 1 grievance form.  Consequently, in May 2009 plaintiff  filed a new Step 1 grievance.  (Docket No. 50-2 at 23).  The response to that grievance was:

> In response to grievance KC08/09-816, you received a response to your first grievance (KC08/09-559) on 2/25/09 regarding your photos.  Thirty-eight (38) photos were confiscated due to the fact that the photos were in a photo album that you could not provide proof of purchase for.  In the response you were directed to contact the ACC property sergeant and inform him that you wanted the photos mailed to your family (at your expense) or destroyed.  At the time of this grievance you have not contacted ACC for disposition of the photos.  No further relief is granted.

11

(Docket No. 50-2 at 23).  Plaintiff then submitted a Step 2 grievance, which was denied

with the following response:

> I have reviewed your Step II Grievance, the attached Step I Grievance,
> and the answer provided at the Step I level by Captain Maestas.  You
> were given the option of mailing your photos out of the facility.  The photos
> will not be returned to you.  Captain Maestas was correct in his Step I
> response, no relief will be provided at the Step II level.  Grievance denied.

(Docket No. 50-2 at 24).  Plaintiff then submitted a Step 3 grievance, which was denied

with the following response:

> I have reviewed your Step 3 grievance that you filed with regard to issues
> previously grieved.
>
> The grievance procedure is outlined in Administrative Regulation 850-4.
> Duplicative issues which have previously been grieved will not be
> addressed again.  This issue was previously addressed in grievance
> number KC08/09-559.
>
> You failed to follow the grievance procedure in this matter; you have not
> exhausted your administrative remedies.  This is the final administrative
> action in this matter. . . .

(Docket No. 50-2 at 26).

Based upon the above, this court finds that the plaintiff did exhaust his

administrative remedies sufficiently such that his claim is not barred by the PLRA's

exhaustion requirement.[1]

**Retaliation Claim**

The Tenth Circuit has held that "'[p]rison officials may not retaliate against or

harass an inmate because of the inmate's exercise of his' constitutional rights. . . . 'This

_____

[1]This court notes that it is not making expressly or by inference any finding as to
whether plaintiff did contact the ACF property sergeant as instructed in the first Step 1
grievance response or as to the correctness of responses to the second round of
grievances concerning the photos.

principle applies where the action taken in retaliation would be otherwise permissible.'"

Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).  The court further noted that

> [o]bviously, an inmate is not inoculated from the normal conditions of
> confinement experienced by convicted felons serving time in prison merely
> because he has engaged in protected activity.  Accordingly, a plaintiff
> "must prove that 'but for' the retaliatory motive, the incidents to which he
> refers . . . would not have taken place." . . .  An inmate claiming retaliation
> must "allege *specific facts* showing retaliation because of the exercise of
> the prisoner's constitutional rights."

Id.

Here, defendant asserts that the plaintiff's retaliation claim fails because the plaintiff cannot show that Reynolds personally confiscated and withheld plaintiff's property, nor can the plaintiff establish that Reynolds directed other staff to confiscate plaintiff's property.  Defendant contends that as a result, plaintiff cannot show that "but for" Reynolds' alleged desire to retaliate against him, his property would not have been confiscated.  This court agrees with the defendant.

Defendant Reynolds' Second Affidavit includes the following.  He was employed at ACC as a correctional officer 1, and as part of his job responsibilities, he was responsible for "packing out" offenders who were being moved out of ACC.  (Docket No. 67-1 at 1, ¶¶ 3-4).  To the best of his recollection, in January 2009 plaintiff was scheduled to be transferred out of ACC.  (Docket No. 67-1 at 1, ¶ 5).  Pursuant to CDOC policy, when an inmate is to be transferred to another facility, his property is "packed out."  (Docket No. 67-1 at 2, ¶ 6).  During that process, the inmate is escorted away from his cell and is not physically present during the pack out of his property.  (Docket No. 67-1 at 2, ¶ 7).  Reynolds was a Unit Officer in January 2009, and pursuant to prison policy, the Unit Officer and another staff person would proceed to pack all

13

items of the inmate's property into either a duffle bag or a plastic trash bag.  (Docket No.

67-1 at 2, ¶ 8).  All of those items would then be taken to the Property Sergeant who

then determined how the property should be disposed of pursuant to prison policies.

(Docket No. 67-1 at 2, ¶ 9).  For instance, items of property that appear on the inmate's

property list and which are not otherwise prohibited would be packed for transfer to the

appropriate location, but items that are not permitted due to prison policies would either

be destroyed or held pending notice to the inmate and an opportunity for him to make

arrangements to have the items mailed out of the facility at the inmate's expense.

(Docket No. 67-1 at 2, ¶¶ 10-11).  In plaintiff's case, as Unit Officer, Reynolds would

have been one of the staff members who packed out plaintiff's property in January

2009.  (Docket No. 67-1 at 2, ¶ 13).  Plaintiff would not have been present pursuant to

standard procedures for packing inmates out.  (Docket No. 67-1 at 2, ¶ 14).  Reynolds

did not throw away, confiscate, or dispose of any item of plaintiff's property, including

photographs.  (Docket No. 67-1 at 3, ¶ 15).  Pursuant to policy, all property items were

packed and taken to the property Sergeant for appropriate handling.  (Docket No. 67-1

at 3, ¶ 16).  Reynolds had no further involvement with plaintiff's property and did not

give the property Sergeant any directions regarding the handling and disposition of the

plaintiff's property.  (Docket No. 67-1 at 3, ¶¶ 17-18).

 Plaintiff has offered nothing other than mere conjecture that Reynolds took

plaintiff's photos.  It is uncontroverted and even evident from the plaintiff's averments in

the Amended Complaint that plaintiff was not present but was instead was in

segregation when his property was packed up and removed from his cell.  Furthermore,

it is uncontroverted that another officer was with Reynolds when the property was

14

packed and also that the property was then given to the property Sergeant, who was the

person who determined how property should be disposed of pursuant to prison policy.

In addition, responses to plaintiff's grievances and the response to his correspondence

to the Warden indicate that plaintiff's photos were confiscated by the property Sergeant

(who is not a party here).  In the February 25, 2009, Step 1 grievance response, plaintiff

was advised in pertinent part, "38 photos were confiscated due to the fact that the

photos were in a photo album that you did not provide proof of purchase.  You must

contact the ACC property sergeant and inform him that you want to have the photo's

[sic] mailed to your family (at your expense) or destroyed."  (Docket No. 50-2 at 22).

Similarly, the June 10, 2009, Step 1 grievance response states in pertinent part, "Thirty-

eight (38) photos were confiscated due to the fact that the photos were in a photo album

that you could not provide proof of purchase for.  In the response [to the prior grievance]

you were directed to contact the ACC property sergeant and inform him that you wanted

the photos mailed to your family (at your expense) or destroyed.  At the time of this

grievance, you have not contacted ACC for disposition of the photos."  (Docket No. 50-2

at 23).  Also, the February 26, 2009, memo from Major T. Filer to plaintiff in response to

plaintiff's letter concerning property issues mentions the photo album, stating in

pertinent part, "We contacted the KCCF property officer who indicated you did arrive at

KCCF with all of those items with the exception of a clock/radio and the photo album. . .

.  The photo album was confiscated as you could not produce a proof of purchase for it.

It contained thirty-eight photos.  You may contact the ACC property officer and advise

him of your preferred method of disposition for the photos, ie; mail home etc.  The photo

album is contraband. . . ."  (Docket No. 55 at 16).  In his response to the motion to

15

dismiss, plaintiff states, "In hindsight I truly doubt my family photos were ever possessed by other officials." (Docket No. 55 at 5). Plaintiff, however, has not offered anything other than conjecture or surmise that Reynolds confiscated the plaintiff's photos. "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. This court recommends that summary judgment be entered for the defendant because no reasonable juror could find for the plaintiff based on the evidence presented in the motion papers. Id. at 1273.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the defendants' Motion for Summary Judgment (Docket No. 50) be **granted**.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

16

Date:  April 28, 2011                    s/ Michael J. Watanabe
       Denver, Colorado                  Michael J. Watanabe
                                         United States Magistrate Judge